By the Court, Robertson, Ch. J.
No satisfactory reason has been afforded, from any thing in the papers before us, why the plaintiff and other bondholders of the eastern or Wisconsin division of the “ Racine and Mississippi Railroad,” are not entitled to all the proceeds of the sale of that branch of the road, in the suit in the United States court in Wisconsin, for the foreclosure of the mortgage upon it. It was a suit simply to foreclose such mortgage, which first ended in a decree of strict foreclosure, although subject- to redemption in five years after the completion of an addition to' such branch road, by continuing it on the western or Illinois division to Freeport, in the latter state, upon payment of all the amount then to become due on such bonds, leaving the mortgage, however, subsisting as *242 security for the principal and future interest. No such redemption having ever been made, an additional decree for the sale of the mortgaged premises, by the marshal of the court, was then made in the same suit. It, however, directed the payment to the defendants, not only of the amount due upon the bonds of such eastern division, but also of certain other moneys advanced by them, in. their own right, after the commencement of such suit, in order to conduct the operations of such road, and complete such continuation of it to Freeport, as the same had been reported by a master, to whom the subject was referred. Neither in that decree, nor in the report of the master on which it was founded, was any discrimination made as to the order in which such two debts one being due to the-defendants, as trustees for the plaintiff and other bondholders, and the other to themselves, in their own right, should be paid. In the absence of any adjudication in that suit upon that point, they were, of course, entitled - to be paid in the order of their legal priority. The debt due to the defendants, in their own right, which was not incurred until long after the commencement of such suit, was, therefore, to be postponed to that due to them as mortgagees in trust. Nothing done by the defendants after they became such mortgagees, without the consent of their cestuis que trust, could take away the preference to whiph the latter were entitled, and nothing was actually done, either in such suit or by matters in pais, to affect it. Possibly there may have been prior incumbrances or liens, having by law a preference, paid or satisfied by the defendants, for which they are entitled to be reimbursed out of such proceeds. Otherwise that part of the judgment in this case, directing the defendants to account for the whole of the proceeds of the sale in such foreclosure suit to the plaintiff and his associate bondholders was perfectly correct.
In regard, however, to that part of such judgment or order made in this case at special term, which requires an account te be taken of the receipts and disbursements of the *243 defendants, while in possession of the entire road from Racine to Savanna, conducting its operations from May, 1859, to October, 1865, other considerations must govern. It is alleged in the complaint, and found in the decision of the court, that the defendants took possession of such road on the 10th of May, 1859, which was the date of the execution of the deed thereof to them, called in the pleadings, and in itself, a “ deed of surrenderand it appears by the testimony before the master in such foreclosure suit, introduced by the plaintiff in evidence in this case, that an agent of the defendants (Thompson) took possession for them on that day. There cannot, therefore, be any question that the defendants took possession of the mortgaged premises in question, under and in pursuance of that deed. The only question which is made is, whether, although having so obtained possession by virtue of such deed, such possession by law immediately enured to the benefit of the plaintiff and his associate bondholders, so as to render the defendants liable, as mortgagees in trust in possession, to their eestuis que trust, for all the profits received by them, deducting merely necessary outlays in protecting the mortgaged premises, or rendering them productive. It is not charged in the complaint, as a fact, that the defendants took possession under the original mortgage, which, in fact, only expressly authorized them to take possession of the mortgaged premises, as <( agents and attorneys in fact ” of the mortgagors. It might, therefore, well be claimed that the fact of possession, under such mortgage, was not at all in issue in this case; or, if it were, it might be doubted whether if ordinary mortgagees could, by the laws of Wisconsin, take possession of mortgaged premises, trustees under such an instrument could do so, except as representatives of the grantors. Even as mortgagees they could not, if the laws of Wisconsin were the same as those of this state, which is to be presumed. Assuming, however, that possession could be taken under such an instrument by the defendants, as trustees for the bondholders, against the will *244 of the grantors, the question of law is then presented, whether the grant of a new estate in lands upon new trusts, and the delivery of possession under it, to enable such trusts to be executed, enures to the benefit of eestuis que trust, under a prior grant of them, upon different trusts, merely because the trustees are the same. It seems, by the opinion given at special term, to have been assumed in the decision that the possession so taken could be detached from the new estate, which it accompanied, and attached to the prior right, which it is supposed the defendants had, to take possession, as mortgagees, so as to be considered a performance of their duty as such, and thereby render them responsible for the profits, which were afterwards capable of being received from such mortgaged premises. From that view of the law I am compelled to dissent. A trustee of lands upon special trusts to arise in futuro, as well as a stranger, may take a grant of a new estate, in the same lands in the meantime, upon different trusts, subject to the performance of the first trusts, which cannot thereby be destroyed. Or he may even take a conveyance upon new trusts, whose execution may interfere with that of such first trust, so as to entangle himself in a double responsibility, and make himself liable to both sets of eestuis que trust for any loss sustained by his not discharging the duty owing to them, and also to the first cestui que trust, for any profit obtained by him under such second conveyance, where he was aided in obtaining it by his position as trustee for them. The present, however, is not an action for damages against the defendants for accepting the second deed, (of s.urren? der,) and thereby embarrassing the rights of the plaintiff. The claim is not of profits acquired by the defendants under a new estate gained by an advantage, derived from their situation as trustees. But it is that, having gained possession by assuming such new estate, all the concomitants, incidents and consequences thereof may be rejected, and only the possession which accompanied it retained, so as to make the defendants liable, as mortgagees in trust in *245 possession, and then all the money paid by them and liabilities they incurred, in pursuance of such second deed, which were not allowable to mortgagees in possession, may be rejected. This, I apprehend, is erroneous. The conveyance of a new estate by the deed of surrender, the assumption by the defendants of the new duties imposed by it, and the possession taken under it, of both the mortgaged premises and the western division in solido as one road, to enable them to perform such duties, formed in contemplation of law but one transaction, giving new rights, and creating new duties. The defendants became also thereby mortgagees for their own future advances. It being, therefore, considered in law but one indivisible act, the possession could not be severed from the residue of the transaction, and attached to a prior barren estate without perception of the profits, in order to render it productive. Such acceptance of the second set of trusts, and the estate created for their performance and possession under it, however beneficial the acts done by the defendants under the same, may have been to their first cestuis que trust, was undoubtedly a violation of their strict duty under the first instrument, and for any loss sustained by them thereby the defendants would be responsible, as well as for any profits made by them therefrom, which were to the prejudice of the plaintiff. But in either case every part of the transaction is to be taken together, as a whole, and either ratified or disaffirmed by the plaintiff and his associate bondholders. They never lost thereby the right of having the first instrument carried out, or any of their security for their claim. The postponement by the defendants of the foreclosure of such first mortgage (as it is considered) although perhaps the result of a desire to carry out such deed of surrender, might have taken place without it. Whatever the responsibility of the defendants by reason thereof may be, it is as wholly independent of any action under such deed of surrender as if it had been taken by a stranger with their assent. The first set of cestuis que *246 trust might have had a remedy, by procuring the removal of the defendants as trustees for a breach of duty in assuming incongruous trusts and the substitution of others in their place, who might have procured such decrees to be opened as procured by fraudulent collusion. But no movement was ever made by any one in such suit until the time for redemption had expired; the road had then probably increased in value by being put in successful operation, the mortgaged premise's, probably undiminished, if not increased in value, remained as security for the principal of the bonds not yet due, and a decree was then obtained for the sale of such premises to satisfy the whole of such principal and interest, as well as other claims. The defendants, therefore, undoubtedly took possession of the mortgaged premises by virtue of a new estate and upon new trusts which they carried out and then quit such possession on the sale, probably without impairing thereby the value of the security of such premises for the bonds in question, (any more than any stranger would have done, who had gone into possession under the mortgagors,) and on the whole transaction, not only without any profit, to themselves, but as appears by the master’s report in the foreclosure suit, at a loss of nearly four hundred and fifty-six thousand dollars.
I am not aware of any principle of law which enables a cestui que trust, when claiming the benefit of an entire and indivisible transaction by his trustee, to reject all the additional burdens or responsibility assumed by such trustee to procure whatever advantages may be obtained therefrom and yet claim such advantages, unless some of the original rights of such cestui que trust were' so destroyed thereby as to be incapable of restoration. (Evartson v. Tappen, 5 John. Ch. 497.) A trustee is.not' compellable to account for ad-, vantages obtained by his position as trustee, by way of punishment for a breach of trust, but as becoming thereby an agent of his cestui que trust, who has a right by a ratification and adoption of all his acts, to claim the benefit of them. The plaintiff and his associate bondholders had therefore *247 no right to separate the possession and other advantages acquired by the defendants under the deed of surrender from the burdens it imposed or the duties assumed by the defendants so as to reject the latter and deprive the defendants of their claim for expenditures and lien on the road therefor. It would certainly be highly inequitable to lie by for nearly eight years, and permit the defendants to continue such road and work it at their own expense and then claim the benefit of all their earnings, while repudiating the expenditure which produced them.
It may also be considered as questionable whether a mortgagee in trust in possession of real estate on or by means of which complicated operations, such as running railway trains, conducting a manufactory or working a mine, are to be carried on, would be bound or entitled to carry on such operations at the expense of the mortgagor. It would therefore be very doubtful, even if the defendants had entered into possession solely as mortgagees, whether their acts in running the cars, or building depots, or continuing the road which produced its earnings, are to be attributed to their right as such mortgagees, and not to their position as trustees under the deed of surrender. If profitable on the whole, the plaintiff might, even in such case, have been entitled to his share of the profits to the extent of his claim; but he would be equally bound to ratify any acts of expenditure by the defendants, performed by them while in possession, beyond those allowable in a mortgagee, and necessary to conduct such new enterprise and render it successful.
I cannot doubt, therefore, that any claim by the plaintiff to any share of the earnings of even the eastern division of the road in question during its management by the defendants, can only arise under the deed of surrender of 1859, and that any account to be taken of them requires the presence in court of all the bondholders of both divisions, as the trust and conveyance was joint. I do not know how light or difficult a task it may be to apportion the profits and expenditures of a continuous railroad composed of *248 various parts, among the owners of the different parts, but in this case, all the bondholders of both divisions were by the terms of such deed of surrender to share indiscriminately pro rata in the net earnings of the entire road. It was made an integral enterprise for the benefit of all. And if the expenditures should prove in excess of the earnings, the bondholders, ratifying such deed of surrender, and claiming under it, are bound to contribute to the indemnifying the defendants for such excess.
A new trial must therefore be granted in this case under the recent amendment of the 268th section of the Code of Procedure, unless the plaintiff will consent to amending the decision and judgment or order in this case, by striking out that part which directs an account of the earnings of the road in question while under the management of the defendants.